UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MAGNUM OIL TOOLS INTERNATIONAL, L.L.C., | § § § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-99 |
| TONY D. MCCLINTON, *et al*, | § § § | |
| Defendants. | § § | |

## ORDER SETTING BOND

Before the Court is "Defendants' Motion for a Preliminary Injunction Bond in the Amount of $23 Million" (D.E. 260), along with Plaintiff's Response (D.E. 264), which advocates a bond of less than two million dollars. The Court took evidence in the form of affidavit and declaration testimony as well as documents attached to the motion and response and held a hearing for arguments on June 17, 2014. At that time, the Court overruled objections and denied "Plaintiff's Motion to Strike Declarations of Stan Keeling and Christopher Martinez" (D.E. 266), noting that the objections would go to the weight rather than the admissibility to be given the declarations.

The Court's preliminary injunction prohibits Defendants from manufacturing and selling the Accused Products that were before the Court at that time, being the Defendants' Mustang Series bridge and frac plugs (MSP #1-MSP #8). D.E. 230, p. 7. Throughout the history of this case, the Court has heard abundant evidence establishing that: (1) there are multiple competing suppliers of bridge and frac plugs that perform the same function as the Accused Products; (2) Defendants can obtain those bridge and frac

plugs from other suppliers but because competitor prices are higher than Defendants' manufacturing costs, the Defendants' use of competitors' frac plugs will adversely affect Defendants' profit margin; and (3) the region is experiencing an oil boom with increasing demand for both downhole plugs and Defendants' services.

Defendants' damage model offered in support of its request for a $23 million bond assumes, contrary to the accumulated evidence in this case, that the inability to sell the Accused Products will essentially put Defendant Jaycar Energy Group, LLC (Jaycar) out of its product business and devastate the remaining service business of its related companies and that it will miss out on a 700% increase in demand for its products and services. Nothing in Defendants' evidence addresses the availability of other brands of downhole plugs to meet their present and future contract requirements or the price differentials that could affect profit margins. And the projections regarding increased demand that Defendants will not be able to supply are a substantial departure from documented trends and are offered without any supporting data.

The Court finds that Defendants' expert evidence in this matter suffers from the fatal flaw of failing to show a sufficient basis in fact or data and failing to show the application of reliable principles and methods. Fed. R. Evid. 702(b), (c). The opinions are thus unreliable and amount to no more than *ipse dixit*. *E.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (rejecting expert opinions that are mere *ipse dixit*).

Plaintiff has offered the Declaration of Keith R. Ugone, Ph.D. D.E. 264-1. Dr. Ugone's damage model is properly focused on the specific issue of lost profits tied to the profit margin on the specific downhole plugs and estimates future losses based upon

Defendants' demonstrable sales data. However, Dr. Ugone's methodology does not account for the rising demand for frac plugs, acknowledged by all parties. Plaintiff, Magnum Oil Tools International, LLC, which deals only in sales of downhole plugs, has previously demonstrated that its business has experienced substantial growth because of increased demand and despite Defendants' alleged inroads into its sales and profitability. D.E. 230-6. Between 2011 and 2012, for instance, Magnum showed a 62% increase in sales. *Id.* According to Magnum, the numbers would be substantially higher if Defendants were not siphoning off sales and causing depressed pricing.

The Court finds that the potential damage to Defendants for the loss of the sales of frac plugs based on 2013 data is $1,710,965 and that historical growth in demand is at least 62%, which would result in a bond amount of $2,771,763.00. The Court acknowledges that a bond supporting a preliminary injunction caps allowable damages[1] and should conform to the highest number sustainable by the evidence so as to avoid irreparable damages. *E.g., Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989), *modified on rehearing*, 901 F.2d 1111 (5th Cir. 1990) (acknowledging that the cap on damages may be eliminated by an undertaking that guarantees payment of damages in excess of a bond that would otherwise be inadequate); *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 887-88 (7th Cir. 2000).

---

[1] Absent proof of malicious prosecution or other issues of "unclean hands" in obtaining the injunction.

Considering the rapid rise in demand for downhole plugs, the Court sets the preliminary injunction bond at $3 million.

ORDERED this 19th day of June, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE